IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOEL F.,

                    Plaintiff,

            v.                                  Civil Action No.
                                                6:20-CV-0904 (GTS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.                  PETER W. ANTONOWICZ, ESQ.
  ANTONOWICZ
148 West Dominick Street
Rome, New York 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              CHRISTOPHER LEWIS POTTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, ineligible for the disability insurance ("DIB")

and supplemental security income ("SSI") benefits for which he has

applied.  The matter has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination resulted from

the application of proper legal principles and is supported by substantial

evidence.

I.    BACKGROUND

Plaintiff was born in April of 1983, and is currently thirty-eight years of

age.  He was thirty-three years old at the time of his amended alleged

onset date of November 1, 2016, and thirty-four years old at the time of his

application for benefits in October 2017.  Plaintiff stands six-foot one-inch in

height, and has weighed at various times relevant to this decision between

three hundred eighty-five and six hundred ten pounds.  Plaintiff resides in a

house in Rome, New York, with his mother and her boyfriend.

Although one of the consultants engaged by the agency to examine

the plaintiff reported that he has received a bachelor's degree and was

working on a master's degree in 2018, all of the other evidence in the record indicates that he received a high school education and has taken some college courses, but is not a college graduate.[1]  Plaintiff was enrolled in special education classes while in school.  He also completed firearms certification programs in 2011 while in North Carolina.  Plaintiff is able to drive and use public transportation.

Plaintiff reports that he stopped working in February 2017.  Prior to that time he worked in various positions, including as an ATM technician, vault teller, unarmed security guard, support sales agent, customer service representative, and technical support representative.

Physically, plaintiff alleges that he suffers from spinal stenosis in his lumbosacral region, spinal degenerative disease, obstructive sleep apnea, hypertension, and a generalized seizure disorder.  Plaintiff has been told that surgery could be appropriate for his spinal disorders, but he must lose more weight before he will be a suitable candidate for surgery.  During the relevant period, plaintiff has treated for these conditions with Syracuse Orthopedic Specialists, Rome Memorial Hospital, Slocum-Dickson Medical

---

[1]    Specifically, in his application to the agency, plaintiff reported having completed one year of college.  At the hearing, plaintiff testified that he attended an online university for one year but did not receive a degree.  Additionally, during the consultative examination with Dennis Noia, Ph.D., plaintiff reported that he was working on an associate's degree online, but stopped in mid-2017 due to medical problems.

Group, Delta Medical, Rome Medical Practice (including Neurology),

Upstate Medical University, Sleep Disorders Lab of Central New York,

Central New York Brain and Spine Neurosurgery, Ajay Goel Physician PC,

New Hartford Medical, PC, and Genesee Orthopedics and Plastic Surgery

Associates.

Mentally, plaintiff alleges that he suffers from a major depressive

disorder.  Although he has been medicated for this condition, plaintiff has

not undergone any specialized treatment, care, or hospitalization for it.

Plaintiff has been prescribed several medications over time including,

though not limited to, Topamax, Oxycodone, Tizanidine, Diclofenac,

Movantik, Propanolol, Hydroxyzine, and Effexor.  Plaintiff also was

prescribed a CPAP machine with oxygen, as well as a leg brace.

Plaintiff has reported that he can do chores such as washing dishes,

cooking, and folding laundry while seated, and grocery shopping with the

aid of a cart.  He can shower, dress, and drive by himself.  He also uses his

computer or tablet, watches television, sometimes goes to church on

Sundays, engages in social activity online, and cares for two dogs and

guinea pigs with help from his mother.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

4

Plaintiff applied for both DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on October 23, 2017.  In support of that application, he alleged a disability onset date of November 30, 2014, which was later amended at the hearing to November 1, 2016. He claims disability based on spinal stenosis of the lumbosacral spine, spinal degenerative disc disease, obstructive sleep apnea, hypertension, a generalized seizure disorder, and a major depressive disorder.

A video hearing was conducted on August 14, 2019, by administrative law judge ("ALJ") Robyn L. Hoffman, to address plaintiff's applications.  Following that hearing, ALJ Hoffman issued an unfavorable decision on October 30, 2019.  That opinion became a final determination of the agency on June 23, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential test for determining disability.  At step one, she found that, although plaintiff appeared to have engaged in substantial gainful activity in January 2017, it was not clear that his work activity in the later portion of 2016 constituted substantial gainful activity, and ALJ Hoffman thus could not ascertain

whether plaintiff engaged in substantial gainful activity for more than a brief period.

At step two, ALJ Hoffman found that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including morbid obesity, lumbosacral degenerative disc disease with spinal stenosis and left foot drop, seizure activity, and a cervical disc bulge.

At step three, ALJ Hoffman examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that Plaintiff's conditions do not meet or medically equal any of the listed impairments, specifically considering Listings 1.02, 1.04, and 11.02.  The ALJ also considered plaintiff's obesity in combination with his other impairments, inasmuch as there is no listing that specifically addresses that condition.[2]

ALJ Hoffman next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work,[3] as defined by the controlling

---

[2]    In Social Security Ruling ("SSR") 19-2p, the Commission has set forth guidance for evaluating obesity.

[3]    By regulation, sedentary work is defined as follows:

regulations, with the following exceptions:

> the claimant can occasionally lift and carry ten pounds; sit for approximately six hours; and stand or walk for approximately two hours in an eight-hour workday. He should avoid working at unprotected heights, climbing ladders, ropes or scaffolds, and working in close proximity to dangerous machinery or moving mechanical parts of equipment. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.

At step four, ALJ Hoffman concluded that plaintiff retains the ability to perform his past relevant work as a technical support sales agent as he actually performed that job. The ALJ noted that the job as he described it required him to sit with a computer for the entire workday without any lifting, bending, squatting or stooping.

At step five, the ALJ alternatively found that the postural and other limitations in the RFC would not significantly erode the base of sedentary work, and therefore the Medical-Vocational Guidelines ("the Grids"), and specifically Grid Rule 201.28, directs a finding of no disability. *See* SSR

---

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

85-15; SSR 83-14; SSR 96-9p.  Based upon these findings, ALJ Hoffman concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on August 12, 2020.[4]  In support of his challenge to the ALJ's determination, plaintiff raises two arguments, contending that (1) the ALJ erred when assessing the intensity, persistence, and limiting effects of his impairments by misrepresenting the evidence of his daily activities and abilities and failing to consider the range of such activities and abilities evidenced in the record, and (2) the ALJ erred in failing to properly assess the effects of his obesity under SSR 19-2p, and in failing to seek testimony from a medical expert as to whether his obesity, in combination with his other impairments, medically equals a Listing at step three.

Oral argument was conducted in this matter, by telephone, on October 29, 2021, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

---

[4]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A court's review under 42 U.S.C. § 405(g) of a final decision by the
Commissioner is subject to a "very deferential" standard of review, and is
limited to analyzing whether the correct legal standards were applied, and
whether the decision is supported by substantial evidence. *Brault v. Soc.
Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*,
312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d
Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there
is reasonable doubt as to whether an ALJ has applied the proper legal
standards, the decision should not be affirmed even though the ultimate
conclusion reached is arguably supported by substantial evidence.
*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the
correct legal standards have been applied, and the ALJ's findings are
supported by substantial evidence, those findings are conclusive, and the
decision will withstand judicial scrutiny regardless of whether the reviewing
court might have reached a contrary result if acting as the trier of fact.
*Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.
1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

  B. <u>Disability Determination: The Five-Step Evaluation Process</u>

  The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other

> kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked to a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    ALJ Hoffman's Analysis of Plaintiff's Subjective Reports

Plaintiff first argues the ALJ failed to properly assess the intensity, persistence, and limiting effect of his impairments under the regulations.

Pursuant to SSR 16-3p, when determining whether an individual is disabled, the ALJ must "consider all of the individual's symptoms, including

12

pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."  SSR 16-3p, 2017 WL 5180304, at *2.  In making a determination regarding an individual's symptoms, the ALJ must first "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms," and then "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities."  SSR 16-3p, 2017 WL 5180304, at *3-4.

In assessing the intensity and persistence of a claimant's symptoms, the ALJ should consider (1) whether the reported symptoms are consistent with the objective medical evidence, (2) the individual's statements about the intensity, persistence and limiting effects of his or her symptoms, (3) information from medical sources, including diagnoses, prognoses, opinions, and statements and medical reports about the individual and his or her treatment, and (4) information from non-medical sources. SSR 16-3p, 2017 WL 5180304, at *5-7.  In addition, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include (1) the claimant's daily activities, (2) the location, duration,

frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the symptoms, (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, that the claimant received for the relief of pain or other symptoms, (6) any measures other than treatment that the claimant uses or has used to relieve pain or other symptoms, and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2017 WL 5180304, at *7-8.

An ALJ's analysis of a claimant's reported symptoms "must contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2017 WL 5180304, at *10.  However, the ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, so long as it is clear from the decision that the ALJ considered all of the evidence and that he provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the individual's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to

discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").

In this case, the ALJ set forth multiple specific bases for finding that plaintiff's reports concerning the intensity, persistence and limiting effect of his symptoms could not be accepted as consistent with the evidence, including (1) plaintiff's certification that he was "ready, willing, and able to work" inherent in his acceptance of unemployment benefits during at least part of the relevant period, noting such certification to be inconsistent with his assertion that he was disabled during that same period; (2) plaintiff's documented work activity – including at least a month of work activity that appeared to be at an SGA level – during the relevant time period; (3) the extent of plaintiff's reports of symptoms and limitations, which were not consistent with the objective medical evidence; and (4) plaintiff's daily activities, which were inconsistent with disability or "the extreme level of limitation" his treating nurse practitioner described in her opinion. Administrative Transcript ("AT") at 19-24.  The ALJ explicitly noted plaintiff's statements, particularly those made during his testimony at the hearing, as well as treatment notes reflecting observations that plaintiff exhibited varying degrees of notable objective signs on examination.  AT 22-24.

Plaintiff argues that the ALJ's finding is erroneous solely because the daily activities relied on were "either misrepresented by the ALJ or are not inconsistent with plaintiff's assertions." *See* Dkt. No. 11, at 15-18.

Considering the record as a whole, I find that the ALJ's determination regarding the intensity, persistence and limiting effect of plaintiff's symptoms is supported by substantial evidence. Of note, plaintiff appears to make no objection to either the ALJ's reliance on his receipt of unemployment benefits or his work activity for a portion of the relevant period. Similarly, he does not challenge the ALJ's finding that the objective medical and other evidence does not support the limitations plaintiff reported. Plaintiff has therefore not even argued that the ALJ's finding is wholly lacking a basis supported by substantial evidence. Moreover, plaintiff's argument regarding the ALJ's reliance on his daily activities is without merit.

In her decision, the ALJ explicitly acknowledged portions of plaintiff's hearing testimony, including that he uses a cane and a brace on his left leg to help him walk, that it takes him an hour to get out of bed in the morning, that most days he does not get dressed because wearing a belt hurts his back, that he spends fifteen to sixteen hours a day lying in bed and about three hours in a recliner, that he can hardly spend any time sitting upright

and cannot stand without leaning, that he cannot lift more than two pounds or walk more than fifty to sixty feet without stopping.  AT 22.  The ALJ noted, however, that other evidence in the record regarding plaintiff's daily activities contradicted these assertions, including reports that he can perform some self-care tasks – albeit with difficulty –, prepare light meals, do some shopping and light chores, shower and dress himself, has pursued college-level education during the relevant period, watches television, listens to the radio, reads, socializes, and, as of June 2019, was walking "about a mile every day."  AT 24.

Contrary to plaintiff's argument, the daily activities listed by the ALJ in the decision are not generally misrepresentative.  The ALJ recounted the range of activities that plaintiff reported and noted where those reports appeared to be inconsistent.  The fact that the record contains statements in which plaintiff asserts greater limitations in his activities of daily living does not mean that the ALJ erred in relying on reports of activities of daily living that suggest lesser limitation.  Indeed, it is the ALJ's responsibility to weigh such competing evidence and determine which evidence is most consistent with the record as a whole.  *Laura Ann H. v. Saul*, 20-CV-0397, 2021 WL 4440345, at \*4 (N.D.N.Y. Sept. 28, 2021) (Dancks, M.J.) (citing *Michelle M. v. Comm'r of Soc. Sec.*, 18-CV-1065, 2020 WL 495170, at \*8

(N.D.N.Y. Jan. 30, 2020) (Dancks, M.J.))  Plaintiff himself acknowledges that many of the daily activities that the ALJ explicitly discussed in her decision were from the function report which he completed as part of the application process.  *See* Dkt. No. 11, at 17.  Nor is there any merit to plaintiff's bare suggestion that the ALJ somehow misrepresented the activities noted in that function report by not explicitly detailing every qualification plaintiff made regarding his ability to perform certain tasks; rather, it is clear that the ALJ found that the extent of plaintiff's reports of limitations was not supported by the evidence as a whole.  *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) (noting that the ALJ need not discuss all of the evidence in the record so long as the evidence of record permits the court to glean the rationale of the ALJ's decision).

A careful review of the record confirms the ALJ's finding that the other evidence in the record contradicts many of plaintiff's reports of near-total incapacitation that were presented at the hearing.  In his submitted function report, for example, plaintiff reported that he takes care of pet dogs and guinea pigs, with the assistance of his mother, can complete self-care tasks and chores like cooking and washing dishes while sitting, and can drive a car, shop and go out alone, although he cannot do chores such as

vacuuming or mopping, and cannot lift anything heavy or do yard work.  AT 798-804.  He also wrote that he uses his computer and television every day, goes to church when he feels good enough to do so, and engages in social activity online.  *Id.*

As to work-related functioning, he reported he cannot lift any weight, cannot stand for more than a few minutes at a time, has pain after walking for more than short distances, has pain after sitting up for a certain amount of time, can climb stairs but it will hurt after a while, and cannot kneel or squat due to pain.  *Id.*

At his examination with consultative examiner Dennis Noia, Ph.D., conducted on January 15, 2018, plaintiff apparently reported that he is able to dress, bathe, and groom himself with difficulty, cook and prepare some light meals, and manage money, drive and use public transportation, but that he cannot do general cleaning, laundry, or shopping.  AT 985.  In a report of an examination with consultative examiner Ivan Wolf, M.D., on the same date, it is noted that plaintiff stated he can do some cooking and shopping, is able to shower and dress himself, that he has a bachelor's degree and is currently working on a master's degree,[5] and that he

---

[5]    As was discussed previously, this is likely erroneous information based on the other evidence in the record strongly suggesting that plaintiff has completed only one year of college studies.

watches television, listens to the radio, reads, socializes with friends, and works on computers.  AT 989.

On December 12, 2016, plaintiff reported to a physician's assistant at Slocum-Dickson Medical Group that he was independent with his activities of daily living and did not have difficulty taking care of himself, although he also noted that he was able to sit comfortably for only five minutes, could not stand or lift comfortably for any amount of time, could walk for two hundred feet without having to stop, and was not able to pick up objects from the floor comfortably.  AT 888.  On February 2, 2017, plaintiff reported to a nurse practitioner at Syracuse Orthopedic Specialists that he was working at regular duty at that time.  AT 850.  On March 23, 2017, he stated to a nurse practitioner at Slocum-Dickson Medical Group that he had been bedbound for the past two weeks due to increased pain; however, this appears to have been the result of an isolated acute exacerbation of his symptoms because a treatment note from April 10, 2017, does not indicate continuing incapacitation.  AT 878, 913.  On June 26, 2019, plaintiff reported to a physician's assistant at CNY Brain and Spine Neurosurgery that he had been walking about a mile every day.  AT 1150. In her decision, ALJ Hoffman appropriately noted that plaintiff engaged in work activity during a portion of the relevant period, thereby raising

questions concerning the extent of his limitations. *See Taylor v. Saul*, 2020 WL 1465855, at \*5 (W.D.N.Y. Mar. 26, 2020) (finding that evidence that the plaintiff was employed as a substitute teacher during the period of alleged disability was relevant to evaluating her subjective reports) (citing *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008)).

Based upon the foregoing, I find that, although the ALJ's discussion of plaintiff's daily activities could have been clearer, she did not commit harmful error in finding that plaintiff's reported daily activities were not wholly consistent with the evidence, nor did she err in relying on some of the reported activities that were consistent with the evidence when finding that plaintiff's reports of greater incapacitation should not be adopted.

Even if the ALJ did err in considering plaintiff's daily activities, her reliance on the objective medical and treatment evidence nonetheless supports her finding with substantial evidence because, as a whole, the objective findings on examinations did not reveal signs consistent with the subjective level of limitation reported by the plaintiff. During the relevant time period, plaintiff was noted in reports of various examinations as being morbidly obese, *see e.g.*, AT 852, 898, 913, 921, 924, 960, 1026, 1141, having some mild or moderate lumbar or sacroiliac joint tenderness, *see e.g.*, AT 852, 874-75, 878, 882, 888, 971-72, 1001, 1031-32, 1141, having

pain with range of motion *see e.g.*, AT 852, 882, 913, 921, 1001, 1009,

having a slight foot drop *see e.g.*, AT 975-76, 1001, 1009, 1084, 1174,

using a cane, *see e.g.*, AT 1031-32, 1038, 1173-74, and having an antalgic

gait, *see e.g.*, AT 1031-32, 1038, 1150.  In many other reports of

examinations, however, he was noted to have essentially unremarkable

findings, including normal gait, no tenderness, normal strength, and normal

range of motion in his upper and lower extremities.  *See e.g.*, AT 856, 864-

65, 906, 1159, 1176, 1185-86, 1187-88, 1190, 1192, 1195.  Overall, these

objective findings provide substantial evidence to support the ALJ's finding

that the intensity, persistence and limiting effect of plaintiff's medically

determinable impairments were not as significantly limiting as alleged, and

thus I find no error in the ALJ's choice not to accept wholesale plaintiff's

allegations and reports regarding his limitations.  *See Williams o/b/o/*

*Williams v. Bowen*, 859 F.2d 225, 261 (2d Cir. 1988) (noting that, "whatever

findings the ALJ makes must be consistent with the medical and other

evidence," and "an ALJ must assess subjective evidence in light of

objective medical facts and diagnoses").

Because the ALJ's decision makes clear that she considered all the

evidence, including plaintiff's subjective reports, but found that his claims

were inconsistent with the degree of limitation supported by the objective

medical and other evidence, I recommend that plaintiff's argument related to the ALJ's evaluation of his reported symptoms be rejected.

        2.    <u>ALJ Hoffman's Analysis of Plaintiff's Obesity</u>

Plaintiff next argues that the ALJ failed to properly analyze or consider his obesity when determining whether he medically meets or equals a listing and when formulating his RFC.  Specifically, plaintiff maintains that the ALJ's failed to properly consider the effects of his obesity under the requirements of SSR 19-2p because the ALJ (1) specifically mentioned obesity only three times in her twelve-page decision, (2) failed to offer any specific explanation of how obesity affects his other severe impairments, and (3) failed to retain a medical expert to assess the effects of his "extreme obesity."  Dkt. No. 11, at 20.

SSR 19-2p, which sets forth guidance for the evaluation of cases involving obese claimants, requires an ALJ to consider the individual's obesity in combination with the rest of his or her medically determinable impairments.  SSR 19-2p, 2019 WL 2374244, at *4.  In particular, when assessing whether a claimant's obesity medically equals a listing, the ALJ should evaluate, on a case-by-case basis based on information in the record, whether the obesity in combination with another impairment increases the functional limitations imposed by that other impairment to an

extent that would medically equal a listing.  SSR 19-2p, 2019 WL 2374244, at *4.  Similarly, when evaluating whether the individual's obesity impacts his or her ability to perform the exertional or nonexertional functions of routine work, the ALJ should consider both the documented impact of the obesity itself as well as the combined effects of obesity with another impairment.  SSR 19-2p, 2019 WL 2374244, at *4.

Here, the ALJ found at step two that plaintiff's morbid obesity constituted a severe impairment, and specifically indicated that she considered his obesity in combination with his other impairments when assessing whether he met or medically equaled any of the listed, presumptively disabling conditions.  AT 19, 21.  Additionally, when weighing the opinion evidence and determining that plaintiff was capable of performing a limited range of sedentary work with occasional postural activities, the ALJ noted that the findings by Dr. Wolf on his examination of plaintiff, "along with [plaintiff's] morbid obesity," supported that finding.  AT 22.  Accordingly, it is manifestly clear that the ALJ considered plaintiff's obesity when assessing both whether plaintiff met a listing, and in determining his RFC limitations.

As to the ALJ's failure to specifically mention or discuss obesity more extensively, it is clear from the content of the ALJ's decision that such

omission is not indicative of a failure to consider the effects of obesity as required by SSR 19-2p.  The ALJ specifically stated that she considered and accounted for the evidence of obesity when limiting plaintiff to a range of sedentary work.  AT 22.  Additionally, both sources on whose opinions the ALJ relied in formulating the RFC – Dr. Wolf and Dr. Poss – indicated that consideration of plaintiff's obesity was factored into their assessments. AT 646 (listing obesity as a severe impairment, noting that plaintiff had morbid obesity in the explanation section for the opinion, and stating that "[w]hen taking into consideration the impact of claimant's weight on functioning and exacerbation of symptoms, a sedentary PRFC is warranted"); AT 989-90 (noting that plaintiff weighed 480 pounds during the examination, observing he was "morbidly obese," and including obesity as a diagnosis).

Plaintiff purports to point to evidence that shows "that obesity contributes to the plaintiff's orthopedic symptoms and limitations."  Dkt. No. 11, at 20-21.  A review of that cited evidence, however, reveals nothing that is inconsistent with the ALJ's findings.  *See* AT 875 (merely noting that plaintiff had "morbid obesity with significant secondary plastic spinal changes as a result); 879 (same); 972 (same); 1027 (same).  Indeed, the cited evidence merely indicates that obesity is likely the cause of plaintiff's

spinal issues; it says nothing about the effects of either of those impairments on his functioning.  Plaintiff has therefore not met his burden to provide evidence that shows that obesity imposes additional or greater functional limitations.  *See Landis P. v. Comm'r of Soc. Sec.*, 17-CV-0681, 2020 WL 2770434, at *5-6 (N.D.N.Y. May 28, 2020) (Hurd, J.) (emphasizing that it was the plaintiff's burden to demonstrate that his obesity caused limitations in excess of the RFC).

I note, moreover, that the fact the ALJ did not explicitly discuss these specific pieces of evidence does not mean that she failed to consider that evidence.  *See Brault*, 683 F.3d at 448 (noting that "[a]n ALJ does not have to state on the record every reason justifying a decision," and that, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.'").  Because it is clear that the ALJ considered plaintiff's obesity at all stages and there is no evidence contradicting the conclusions resulting from that assessment, I find no error in the ALJ's application of SSR 19-2p.

As to plaintiff's argument that a medical expert was required in order to discuss the effects of his obesity, he has pointed to no evidence that would indicate that the ALJ was unable to assess the effects of his obesity on his functioning based on the record before her.  As was already

discussed, there is no evidence in the record that would suggest that

plaintiff's weight or body habitus imposed any specific or extraordinary

effects on his functioning that the ALJ would not have been competent to

weigh based on a consideration of all of the evidence before her.  Nor is

there any indication that the record was so insufficient as to require

development or supplementation.  Indeed, the record contains opinions

from two separate medical sources who specifically considered plaintiff's

obesity when rendering those opinions, and nearly all the treatment notes

make reference to the fact that plaintiff is obese.  It is well established that

the decision of whether to seek review by a medical expert is within the

discretion of the ALJ.  *See Ramos v. Berryhill*, 395 F. Supp. 3d 329, 343

(S.D.N.Y. 2019) (finding failure to obtain medical expert testimony in

determining whether impairments met a listing was not error because the

choice to do so at that stage is discretionary); *Jeffrey C. v. Berryhill*, 18-CV-

0505, 2019 WL 3361256, at *5-6 (N.D.N.Y. May 22, 2019) (Stewart, M.J.)

(citing *Beasock v. Colvin*, 12-CV-1355, 2014 WL 421324, at * (N.D.N.Y.

Feb. 4, 2014) (Sharpe, C.J.)); *Van Walkenberg ex rel. B.G. v. Astrue*, 08-

CV-0959, 2010 WL 2400455, at *17 (N.D.N.Y. May 27, 2010) (Bianchini,

M.J.)).  Because there was no indication that any such expert testimony

was warranted in order to complete the record, I decline to second-guess

the ALJ's exercise of her discretion on this matter.

For all of the above reasons, I recommend that plaintiff's argument related to the ALJ's assessment of his obesity be rejected.

### 3.    Plaintiff's Other Contentions

In addition to his main arguments, plaintiff raises two other potential bases for challenging the ALJ Hoffman's decision.  First, he argues that the ALJ's "almost exclusive" reliance on the opinions of consultative examiner Dr. Wolf and State Agency medical consultant Dr. Poss was erroneous. Dkt. No. 11, at 21.  This argument fails for two reasons.  First, it is abundantly clear that the ALJ did not rely exclusively on these two opinions, but rather considered all of the evidence in the record, including the objective medical evidence and plaintiff's own subjective reports as required.  Second, although plaintiff appears to imply that the ALJ erred in relying on these opinions over the opinion of Nurse Practitioner ("NP") Philley, he offers no explanation as to why it was improper for the ALJ to do so, and I find no error after reviewing the record evidence, which, as the ALJ discussed, is inconsistent with the extreme degree of limitations opined by NP Philley.

Plaintiff next argues that the ALJ should have engaged the services of a neurologist or orthopedic medical expert to interpret neurological

findings in the record, such as the medical meaning of "no acute distress" and how full strength in the upper extremities would impact his abilities to sit, stand, or handle objects.  Dkt. No. 11, at 21-22.  As was discussed previously, it is within the ALJ's discretion to determine whether the services of a medical expert are necessary, and there is no indication that the failure to obtain such services as plaintiff describes here is error. *Ramos*, 395 F. Supp. 3d at 343; *Jeffrey C.*, 2019 WL 3361256, at *5-6. Moreover, it is not clear how observations that, to any reasonable person, are indicative of no limitation would require a medical source to interpret. There is simply no basis for plaintiff's speculation that a medical source would interpret these terms in any way other than the ALJ did here, or that any misinterpretation of those terms materially affected the outcome of his claim in this case.  To accept plaintiff's argument that a specialist medical expert was required to interpret such mundane terms would require the retention of a medical expert in nearly every case, a result clearly not intended by the regulations.

        Additionally, at the oral argument held by telephone on October 29, 2021, plaintiff elaborated on his argument that the ability to perform sedentary work is not supported by substantial evidence, arguing that (1) there is no evidence to support the ALJ's determination that he could

perform the six hours of sitting required for sedentary work, and (2) the MRI
evidence supports that he had greater limitations than those accounted for
in the RFC.

Regarding both of these arguments, I note that Dr. Poss, on whom
the ALJ relied in part when making the RFC determination, opined that
plaintiff was capable of sitting for about six hours in an eight-hour workday.
AT 649-52.  In rendering this opinion, Dr. Poss explicitly considered the
MRI evidence of plaintiff's lumbar spine from January 4, 2017, that showed
severe canal stenosis at the L3-L4 level, as well as the examination and
opinion of consultative examiner Dr. Wolf, whose opinion is admittedly
silent on the issue of the ability to sit, but is also devoid of any indication of
limitations in that ability.  Notably, plaintiff has not pointed to any evidence,
aside from his own subjective reports, to support his argument that he is
incapable of sitting for six hours, and, as was discussed above, the ALJ
properly found that not all of plaintiff's subjective reports of limitation were
consistent with the evidence in the record as a whole.  Because Dr. Poss
rendered an opinion regarding plaintiff's ability to sit that is consistent with
the RFC – and which the ALJ found to be consistent with the record as a
whole – and because Dr. Poss considered and interpreted the MRI of
plaintiff's lumbar spine in rendering that opinion, plaintiff's additional

arguments raised at oral argument are without merit and should be rejected.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge of the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 12) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     November 9, 2021
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge